## BETTS COMPANY *v.* HANCOCK.

1. A verdict for $8,000, in favor of a boy between thirteen and fourteen years old, on account of a permanent injury sustained by him, which caused him great pain and suffering and rendered him a cripple for life, can not be held to be so excessive as to show bias and prejudice on the part of the jury.

2. In the trial of a suit by a servant against his master, for personal injuries alleged to have been caused by being furnished an unsafe place in which to work, and with unsafe machinery, the latter being an uncovered, rapidly revolving circular saw, which was situated beneath a platform two to two and a half feet wide on which the servant worked by sliding boards into a bin provided for the purpose, in the handling of which the servant slipped upon the greasy platform and fell upon the saw and was injured, it is competent to admit evidence tending to prove negligence on the part of the master, by showing that the saw was uncovered.

3. Newly discovered evidence is not cause for a new trial, where it is merely impeaching in its character, or where the evidence, if produced on another trial, would not probably work a different result.

4. In a suit by a servant against his master to recover damages for personal injuries alleged to have been caused by the negligence of the master in not furnishing a "reasonably" safe place to work, it is inaccurate for the court to instruct the jury that "It was the duty of the defendant in this case to have used, in the transaction under investi-

gation, ordinary care and diligence, as I have defined it to you, in furnishing the plaintiff a safe place to work—safe appliances with which to do the work required of him, and in giving him such instructions and warnings in regard to the dangers incident to his position or his work as such ordinary care and prudence would have suggested to be necessary." But a new trial will not be required where it appears that the instruction complained of, taken in connection with the general charge, was not calculated to confuse and mislead the jury.

5. Grounds of a motion for a new trial not referred to in the brief of counsel for the plaintiff in error will be treated as abandoned.

6. In a suit by a servant, a minor under fourteen years of age, against his master, to recover damages for personal injuries alleged to have been caused by the negligence of the master in not furnishing the servant a reasonably safe place to work, and reasonably safe machinery, it is not error for the court to instruct the jury as follows: "If, under the rule of law given you in charge, you should find that the plaintiff is entitled to recover in this case, in estimating the damages you may consider the pain and suffering he may have endured at the time of and since the accident and injury; for the mental suffering he may experience throughout life by reason of the injury to his leg and to the impairment of his physical strength and vigor. . . After all, in estimating these damages, there is no other standard or measure than your enlightened consciences and your impartiality under your oaths as jurors."

7. In such a case as just stated, it is not error harmful to the defendant for the court to instruct the jury as follows: "Should you use the Carlisle Mortality Table heretofore referred to, you may arrive at the plaintiff's expectancy of life after he had reached the age of 21 years by ascertaining from said table his expectancy at the time he was injured, and from the total expectancy deducting the number of years intervening between his injury and his majority, or 21 years."

8. The charge complained of, with respect to the rule of reducing the gross amount of loss found by the jury, if any, to its present value, while inaccurate, was more beneficial to the defendant than to the plaintiff, and will not require a new trial.

9. In an action by a servant thirteen and a half years of age, to recover damages from the master for personal injuries sustained by the former on account of alleged negligence of the latter in failing to provide a reasonably safe place to work and reasonably safe machinery, the amount of the damages on account of pain and suffering, and of impairment of future earning capacity after he shall have arrived at the age of 21 years, may properly be left to the conscience of impartial jurors, without any proof as to prospective earning capacity.

10. Whether a servant thirteen and a half years of age was of sufficient age and capacity to appreciate and guard against the danger of an open running saw located beneath an unenclosed platform two and a half feet wide, on which he worked for the master in taking boards from a revolving chain and sliding them into a bin, and whether or not the master was negligent in failing to warn him of such danger, were questions for the consideration of the jury. It appearing from the evidence in the present case that there was sufficient testimony to

authorize the jury to find that the plaintiff was not of such age and
capacity as to appreciate the danger surrounding him and to guard
against it, the verdict will not be disturbed.

DECEMBER 11, 1912.  REHEARING DENIED JANUARY 25, 1913.

Action for damages.  Before Judge Frank Park.  Turner su-
perior court.  December 29, 1911.

Joe Hancock, by his next friend, brought suit against the J. S.
Betts Company, in which he sought to recover the sum of $20,000
damages for certain personal injuries alleged to have been sus-
tained by him, while working for the defendant as an employee,
by reason of the negligence of the defendant, its superintendent
and agents.  It was further alleged as follows: The plaintiff, at
the time of the injury, was in sound bodily health, was thirteen
and a half years of age, had an expectancy of 46.51 years, was earn-
ing 50 cents a day, and as he increased in years his earning capacity
would have materially increased.  On October 20, 1908, and for
about six weeks prior thereto, he had been in the employment
and service of the defendant, doing such work in and about the
defendant's planing-mill as he was directed to do by the defendant,
the superintendent, and those placed in authority over him.  On
the day of the injury the plaintiff was engaged in taking boards
from a carrier-chain and passing them into a bin or receptacle,
from which another employee passed the boards through a "resaw,"
located immediately below the place where the plaintiff was stand-
ing.  In order for the plaintiff to do this work, he was required
by the superintendent of the mill to stand on a narrow staging or
platform, five or six feet above the resaw, and estimated variously
from two to three feet in width.  Grease had been used on the
platform, to cause the board to pass more easily over it, and it had
become slick and slippery.  The platform was not boxed or en-
closed to prevent a person walking thereon from falling, nor was
there any cover or other protection over the resaw.  In order to take
the heavier boards from the chain, it was necessary and customary
(and this was known to the defendant and its superintendent) to
balance the boards on the chain nearest the plaintiff by throwing his
weight on them and "teetering them," causing them to slide into
the bin made to receive them.  The superintendent ordered the
plaintiff to work in the place above described, and "knew or should
have known the dangers incident thereto, but neither defendant,
the superintendent, nor any one for them" gave the plaintiff any

warning or notice of the danger, nor did they use any caution to protect him from the danger. On the day of the injury, when he threw his weight on a board to "teeter it" and free it from the chain, through some defect in the chain, or for other reason, it broke in two, causing him to lose his balance (this being contributed to by the greasy condition of the platform) and to fall therefrom upon the rapidly running saw. He sustained the following injuries: A large piece of flesh, four or five inches in length, three or four inches in width, and half an inch or more in thickness, was cut from the inside of his right thigh. The tibia, or small bone in his right leg, between the knee and ankle, was dislocated at the knee and is still so dislocated, and about four or five inches below the knee the bone was crushed and shattered so that two inches or more of said bone was either cut out by the saw, or had to be subsequently removed, and is now entirely gone. On account of these injuries he was confined to his bed for four months or more. He suffered great pain, both mentally and physically, and will always suffer great mental pain on account of being a hopeless cripple, it being impossible for him to sustain his weight on his right leg without a crutch. His physical earning capacity is totally lost. The negligence alleged was: in not furnishing the plaintiff a safe place to work, and in not giving him warning of the dangers incident thereto, which were known to the defendant and its agents, and which, on account of the plaintiff's tender years and inexperience, were not known and could not have been known to him by the exercise of ordinary care on his part, nor did he have equal capacity with that of the defendant and its agents of knowing the dangers or defects; in not furnishing a wider platform for him to stand on, and in not having the platform enclosed; in allowing the platform to become slick and greasy, which either caused or contributed to the injury; in placing the plaintiff over the rapidly running saw, without having it so covered or protected as to prevent persons on the narrow and greasy platform above from coming in contact therewith; and in placing a boy under 14 years old in a position requiring the physical ability of an ablebodied man. The defendant denied generally all the material allegations of the petition.

The evidence for the plaintiff substantially supported his allegations. The only evidence that need be referred to specifically is as follows: The plaintiff "is a usual boy of strong vitality." He

was born on March 2, 1895. His father testified that "he has been a bright boy all his life. I don't think he was above the average boy. He was a bright boy. . . I had not released control of this boy." The jury returned a verdict for the plaintiff for $8,000. A motion for a new trial was overruled, and the defendant excepted.

*J. E. Hall, J. B. Hutcheson, J. A. Comer,* and *J. H. Tipton,* for plaintiff in error. *F. G. Boatright,* contra.

HILL, J. (After stating the foregoing facts.) In this case the servant brought suit against the master to recover damages for personal injuries sustained while in the employment. The servant was a boy thirteen and a half years of age. The master was engaged in running a planing-mill, and the boy was employed at 50 cents a day to take boards from a revolving chain and have them fall into a bin prepared for the purpose, where they were directed by another employee to an uncovered resaw located beneath the platform on which the plaintiff worked. The platform had no railing around it. While engaged in teetering one of these boards, the plaintiff in some manner slipped and fell on the resaw, and was injured as described in the foregoing statement of facts.

In a case of this kind, the rule which obtains against a railroad does not apply, and the general law of master and servant applies, where the presumptions are in favor of the master, and the burden of overcoming them is upon the servant. *Whatley* v. *Block,* 95 *Ga.* 15 (21 S. E. 985).

1. The first and second grounds of the amendment to the motion for a new trial complain that the verdict is so excessive as to show bias and prejudice on the part of the jury in favor of the plaintiff and against the defendant. The evidence shows that, besides the pain and suffering, loss of earning capacity, and other elements of damage, this young boy will go through life a cripple, with practically one leg. It is a question of what would be proper compensation for an injury of this kind under the circumstances of this case; and we can not assume, from the amount of the verdict alone, that the verdict for $8,000 is so excessive as to show bias and prejudice on the part of the jury. *Savannah etc. Ry. Co.* v. *Smith,* 86 *Ga.* 229 (12 S. E. 579).

2. The third special ground of the motion for a new trial is as follows: "While the plaintiff was on the stand testifying, plain-

tiff's counsel asked plaintiff the following question: 'Was there any cover over that saw?' To this question and the answer sought thereby the defendant objected in the following language: 'I object to any evidence in regard to a covering over the saw, unless the plaintiff shows that the machines of like kind in general use were provided with such covers.' Upon an inquiry made by the court of plaintiff's counsel, whether plaintiff intended to show that such machines in general use had covers over them, plaintiff's counsel made the following statement: 'We propose to show, your honor, by this witness that there was no railing around this platform and that there was no cover over the saw. Either one would have prevented the plaintiff from falling on the saw.' Thereupon the court overruled the objection made by defendant's counsel, and over defendant's objection permitted the witness to answer to the question above stated, 'No, sir.' Movant contends that this evidence was irrelevant and prejudicial, and the court's ruling was error, for the reason that the law required of a master no more than that he use ordinary care to furnish machinery and appliances equal in kind to those in general use. Defendant contends, that, the plaintiff stating or indicating to the court that he did not intend to prove that saws of the same kind in question and in general use were provided with covers, the above testimony should not have been given to the jury. To the court's ruling movant then and there excepted, and now excepts and assigns the same as error." The objection is that this evidence was irrelevant, and prejudicial to the defendant, for the reason that the law requires of a master no more than that he use ordinary care to furnish machinery and appliances equal in kind to those in general use. Negligence had been alleged by the plaintiff, because the defendant had failed to cover the resaw, and to put a railing around the platform on which the plaintiff worked. The plaintiff was, by the evidence objected to, attempting to prove his case as laid. No demurrer, or motion to nonsuit, was made in this case, so far as the record shows. The burden was on the plaintiff to show such negligence on the part of the master as would entitle the plaintiff, prima facie, to recover; and we think the evidence objected to was admissible for that purpose. *Cen. Ry. Co.* v. *Hardin*, 114 *Ga.* 548 (40 S. E. 738). The general rule is that the master is under a duty to furnish his employee with a reasonably safe place to work. 1 Bailey on Per. Inj. § 69.

But this rule is subject to some qualifications. In *Middle Ga. &c. Ry. Co.* v. *Barnett,* 104 *Ga.* 582 (30 S. E. 771), Lumpkin, P. J., said: "Some kinds of work are necessarily attended with dangers against which the master can not by any degree of diligence provide. In such case, the law does not require of him impossibilities; but if, by exercising ordinary care, he can make safe the place wherein the servant is to labor, it is the master's duty to do so. In any given case the jury must determine from the evidence what were the risks incident to the work in hand; and in arriving at a conclusion upon this subject, the ignorance or knowledge of the servant as to the existence of a defect, and, if he was ignorant, whether his ignorance was or was not due to his own negligence, are all matters for determination by the jury." We think the evidence was admissible to show that the master could, by exercising ordinary care, make the place reasonably safe by placing the cover over the saw and the railing around the platform on which the plaintiff stood. If this evidence tended to show negligence on the part of the defendant, we think it was admissible. See 1 Labatt on Master & Servant, § 19, p. 36. There was evidence tending to show that there had previously been a railing around the platform, placed there by the defendant, but prior to the employment of the plaintiff the railing had been removed. It is further contended that the evidence should have been excluded, because the plaintiff indicated to the court that he did not intend to prove that saws of the same kind in question and in general use were provided with covers. We think that under the facts of this case this contention is unsound. Our statute declares that the master must exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. Civil Code, § 3130. One of the acts of negligence alleged was, in not having the platform, on which the plaintiff was required to stand, so enclosed as to prevent one from falling therefrom, as well as in not having the saw covered. How could the plaintiff prove these allegations, which were not demurred to, unless he showed the actual conditions surrounding the machinery and the platform? The court did not err in letting in the evidence over objection.

3. The fourth ground of the motion complains that the court should have granted a new trial because of newly discovered evi-

dence tending to show that the plaintiff stated to certain teachers of the public schools at Ashburn, in the month of December, 1907, that his age was fourteen years, and to still another, in January, 1910, that he was fifteen years old. It is insisted that this testimony, on a new trial, would establish the fact that the plaintiff was over fourteen years old when the injury occurred; and if so, a different rule of law would apply than in a case where the child was under fourteen years old. Between the ages of ten and fourteen years, there is no presumption of a child's capacity to know and appreciate obvious danger. Central R. v. Brinson, 70 Ga. 207, 237. The court's charge was based on the evidence that the child was under fourteen years old. In the instant case the father of the boy testified that he was born on March 2, 1895. The son testified to the same effect. Should a new trial have been granted, it is hardly probable that the positive testimony of the father and son would be overcome by testimony of the declarations of the son, whose statements to the newly discovered witnesses might or might not have conflicted with the father's testimony. The statement of the boy to the teachers is not inconsistent with the idea that the boy was placing his age at his next birthday rather than his last, which is sometimes done when the future birthday is nearer than the last. Besides, the evidence is impeaching in its character, and the well-settled rule is that a new trial will not be granted where newly discovered evidence is for this purpose.

4. The fifth ground of the motion assigns error in the following instruction to the jury: "It was the duty of the defendant in this case to have used, in the transaction under investigation, ordinary care and diligence, as I have defined it to you, in furnishing the plaintiff a safe place to work—safe appliances with which to do the work required of him, and in giving him such instructions and warnings in regard to the dangers incident to his position or his work as such ordinary care and prudence would have suggested to be necessary." Section 3130 of the Civil Code provides that "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he must use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence." The objection is that the court charged the jury that the master must provide the servant a "safe"

place to work, when the statute only imposes the duty of providing a "reasonably" safe place to work and "reasonably" safe appliances. The statute unquestionably has the qualifying word "reasonably" before the word "safe," and that is the rule. In *Pelham Mfg. Co. v. Powell,* 6 *Ga. App.* 308 (64 S. E. 1116), it was held: "A charge which fails to qualify the care required to be exercised by the master as 'ordinary care,' or to qualify the condition of the place and appliance furnished by the master as that of 'reasonable safety,' but instructs the jury, without qualification, that 'the master is charged with the necessity of furnishing such machinery as will be safe,' incorrectly states the rule of law defining the master's duty, and in effect makes him an insurer of the servant's safety." The charge here complained of is undoubtedly inaccurate, but the court had previously instructed the jury correctly on this subject in substantially the language of the statute. Having already charged them the true rule, we can not say that the court later so misstated it as to confuse or mislead the jury.

5. The 6th and 8th grounds of the motion are not referred to in the brief of counsel for the plaintiff in error, and will be treated as abandoned.

6. The following charge is not erroneous for any of the reasons assigned: "If, under the rule of law given you in charge, you should find that the plaintiff is entitled to recover in this case, in estimating the damages you may consider the pain and suffering he may have endured at the time of and since the accident and injury; for the mental suffering he may experience throughout life by reason of the injury to his leg and to the impairment of his physical strength and vigor. . . After all, in estimating these damages, there is no other standard or measure than your enlightened consciences and your impartiality under your oaths as jurors." *Davis* v. *Central Railroad,* 60 *Ga.* 329 (4); *Atlanta Ry. Co.* v. *Gardner,* 122 *Ga.* 82, 86 (49 S. E. 818).

7. The following charge, is not error harmful to the defendant: "Should you use the Carlisle Mortality Table heretofore referred to, you may arrive at the plaintiff's expectancy of life after he had reached the age of 21 years by ascertaining from said table his expectancy at the time he was injured, and from the total expectancy deducting the number of years intervening between his injury and his majority, or 21 years."

8. The charge complained of, with respect to the rule for reducing the gross amount of loss found by the jury, if any, to its present value, while inaccurate, was more beneficial to the defendant than to the plaintiff, and will not require a new trial.

9. Error is assigned upon the following charge of the court: "You should also take into consideration and give the proper effect to any evidence before you, if there be such, tending to show that there were reasonable prospects of increased earnings on the part of the plaintiff in case he had not been injured." It is insisted that there was no evidence in the case to warrant such instructions to the jury. The evidence shows that the plaintiff was a minor under the age of 14 years. In such a case, the rule is different from where the injured one is an adult. Where an adult sues for personal injuries, there must be proof of the earning capacity of the plaintiff, in order to support such a charge as that complained of here. Thus, in *So. Ry. Co.* v. *Scott, 128 Ga.* 244 (57 S. E. 504) it was held: "A charge instructing a jury to take into consideration and give the proper effect to any evidence before them, if there be such, tending to show that there was a reasonable prospect of increased earnings on the part of the plaintiff in case he had not been injured, should not be given, where there is no evidence to warrant it." See also *Ga. So. Ry.* v. *Wright, 130 Ga.* 696 (61 S. E. 718). But where minors sue for personal injuries, the rule seems to be otherwise. In *W. & A. R. Co.* v. *Young, 81 Ga.* 397 (7 S. E. 912, 12 Am. St. R. 320), it is held: "For a personal injury to a child nine years old, including deprivation of a member, the law furnishes no measure of damages other than the enlightened conscience of impartial jurors, guided by all the facts and circumstances of the particular case. Amongst the results of the injury to be considered are pain and suffering, disfigurement and mutilation of the person, and impaired capacity to pursue the ordinary avocations of life at and after attainment of majority." And see *Davis* v. *Central Railroad, 60 Ga.* 329. In the case of Buckry-Ellis *v.* Mo. Pac. Ry. Co., 158 Mo. App. 499 (138 S. W. 912-914), it was said: "As to infants of tender years, it is impossible to give evidence of the pecuniary value of such probable loss; and therefore the rule is that the question of damages for loss on account of impairment of future earning capacity is left to the sound judgment, experience, and conscience of the

jury, without any proof thereof whatever. . . Mr. Watson, in his work on Damages, § 514, says substantially, in speaking of an infant whose earning capacity was untried, that to require evidence of specific pecuniary loss in any amount in such cases would be to deny a recovery on this ground altogether. The result therefore is that a distinction is expressly recognized between such cases and cases where the plaintiffs are adults. The fact of the inability to prove the prior and probable earning capacity is not to be invoked against the infant; for, as between the wrong-doer and the innocent victim of the tort, the former, and not the latter, should suffer the consequences of any uncertainty in the extent of the loss." And in Ferrier *v.* Schoenberg Mercantile Co., 158 Mo. App. 533 (138 S. W. 893-894), it is said: "When a recovery is sought for loss of time or past earnings, it is possible for the pleader to make a fair estimate and claim in respect of the matter, for he is then possessed of all the facts pertaining to it. It is past, and one knows the loss from experience. Such is not true, however, in any case where the claim is for the loss of earnings or diminished earning capacity in the future, for no one can foresee with certainty what such loss may be; and especially is this true in the case of an infant. Indeed, the courts recognize this feature of the matter to such an extent as to affirm that in cases where the plaintiff is an infant with no fixed avocation or trade, and therefore wholly unable to even conjecture what his probable future calling and loss of earnings therein may be, a recovery may be allowed on that score without any proof whatever suggesting the amount;" citing numerous authorities. See also Rosencranz *v.* Lindell, 108 Mo. 9 (18 S. W. 890, 32 Am. St. R. 588); Stotler *v.* C. & A. R. Co., 200 Mo. 107 (98 S. W. 509); Sedgwick on Damages, § 486 (6), p. 932.

10. Whether the danger to the plaintiff in this case from the saw and place to work was so obvious to him that no warning of such danger was necessary from the master, and whether the minor was of such age and capacity as to be cognizant of the obvious danger and appreciate the hazard and to guard against it, were questions of fact for the jury to determine from the evidence. It was for the jury to say, in the light of the evidence, whether the age and capacity of the minor were such as to bring him within the rule where no warning is necessary from the master, and where he must guard against obvious danger. The jury by their verdict

said, in effect, that he did not come within the rule. There being sufficient evidence to support this finding, we ought not to disturb it. *Wynne* v. *Conklin,* 86 *Ga.* 40 (12 S. E. 183) ; *Rhodes* v. *Ga. R. Co.,* 84 *Ga.* 320 (10 S. E. 922, 20 Am. St. R. 362). And see *Central R.* v. *Brinson,* 70 *Ga.* 237; *Atlanta R. Co.* v. *Smith,* 94 *Ga.* 107 (20 S. E. 763).

> *Judgment affirmed. All the Justices concur.*